**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02343-NYW

J.T.L.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action arises under Titles II and XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), which denied applications for Disability Insurance Benefits and Supplemental Security Income filed by Plaintiff J.T.L. ("J.T.L." or "Plaintiff"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED**.

## BACKGROUND

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 13, 2017. [Doc. 8-5 at 203, 209].[2] In his application, Plaintiff

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using his initials only.

[2] When citing to the Administrative Record, the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

alleged that he was suffering from, and prevented from working due to, the following conditions: side effects of a stroke; an over-active bladder; a "possible catheter"; short-term memory loss; bowel incontinence issues; kidney issues; bladder stones; insomnia; nocturia; testosterone replacement therapy; and hypertension. [*Id.* at 203; Doc. 8-6 at 243].

The Social Security Administration ("SSA") denied Plaintiff's requests for benefits on October 6, 2017. [Doc. 8-4 at 106]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), [*id.* at 115], which was held on August 1, 2019. [*Id.* at 166]. ALJ Diane Davis issued an unfavorable decision on Plaintiff's applications on October 9, 2019. [Doc. 8-2 at 13–32]. After the Appeals Council denied Plaintiff's request for review, *see* [Doc. 8-10 at 913], Plaintiff appealed to the United States District Court for the District of Colorado. [*Id.* at 921–22]. The Honorable Robert E. Blackburn summarily reversed and remanded the decision after the Commissioner filed an unopposed motion to remand. [*Id.* at 919–20]; *see also [J.T.L.] v. Commissioner*, No. 20-cv-02029-REB (D. Colo.). Based on Judge Blackburn's order, the Appeals Council remanded the case back to the ALJ. [Doc. 8-10 at 878]. The ALJ held another hearing on November 1, 2021, [Doc. 8-9 at 840], and issued another unfavorable decision on February 7, 2022. [*Id.* at 811–33].

In her decision, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019 and that he had not engaged in substantial gainful activity as of his alleged disability onset date of August 31, 2016. [*Id.* at 814]. The ALJ also determined that Plaintiff has the following severe impairments: overactive bladder; depressive disorder; anxiety disorder; alcohol use disorder; and opioid use disorder, and that these determinable impairments significantly limit his ability to perform basic work activities. [*Id.*]. The ALJ also found that

2

Plaintiff has the following non-severe impairments: hypertension; hypogonadism; constipation; kidney issues; bladder stones; history of cerebrovascular accident; and insomnia. [*Id.*].

The ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations. [*Id.* at 815]. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c)[3] with the following limitations:

> [Plaintiff has] the ability to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can occasionally climb ladders, ropes, or scaffolds, and work at unprotected heights. The work allows for one additional break of five-to-ten minutes duration daily, in addition to the typical fifteen-minute morning and afternoon breaks, and thirty-minute lunch break. The claimant can understand, remember, and carry out more than simple but less than complex tasks that can be learned in mastered in up to six months' time or less. At such levels, he can maintain concentration, persistence, and pace, can make routine workplace decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

[*Id.* at 817].

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 25, 2022, which rendered the ALJ's decision the final decision of the Commissioner. [*Id.* at 801–03]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on September 12, 2022. [Doc. 1]. This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

3

**LEGAL STANDARD**

An individual is eligible for DIB under the Act if he or she is insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that he was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). In addition, SSI is available to an individual who is financially eligible,[4] files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382; 20 C.F.R. § 416.202. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that he was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is disabled only if the individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905(a).[5] When a claimant has one or more physical

---

[4] SSI is a needs-based program established for individuals with limited resources. *See* 20 C.F.R. § 416.110; *see also Ford v. Commissioner*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between DIB and SSI).

[5] Section 404 of Title 20 of the Code of Federal Regulations relates to Title II of the Act and governs proceedings related to applications for DIB; section 416 relates to Title XVI of the Act and governs proceedings related to applications for SSI. *See* 20 C.F.R. §§ 404.1, 416.101.

or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five.  *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards.  *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty*, 515 F.3d at 1070 (quotation omitted).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's," *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016), but the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.

Remand is also warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).  But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

Plaintiff identifies two issues with the ALJ's decision that he argues warrant remand.  *See* [Doc. 12 at 4].  First, he contends that the ALJ improperly rejected the opinions of Chris Leeman ("Mr. Leeman"), a licensed marriage and family therapist, without giving valid reasons.  [*Id.* at 12].  Then, Plaintiff claims that the ALJ failed to properly evaluate the opinions of Dr. Artin Terhakopian ("Dr. Terhakopian").  [*Id.* at 17].  The Commissioner responds that the ALJ properly considered the persuasiveness of each medical source opinion.  [Doc. 15 at 13–20].  The Court addresses the Parties' arguments below.

**I.     Evaluating Medical Opinions**

The Social Security Regulations identify five categories of evidence to be considered by the SSA in adjudicating a claim for benefits: (1) objective medical evidence; (2) medical opinions;

6

(3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a), 416.913(a). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in work-related abilities. *Id.* §§ 404.1513(a)(2), 416.913(a)(2). The ALJ has a duty to "give consideration to all the medical opinions in the record," *Keyes-Zachary*, 695 F.3d at 1161, and the ALJ must articulate how persuasive she finds each medical source opinion. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. *Id.* §§ 404.1520c(c), 416.920c(c).[6] The Regulations instruct that the factors of supportability and consistency "are the most important factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is therefore required to explain how she considered the supportability

---

[6] The Regulations previously required the ALJ to give greater weight to the claimant's treating sources. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "In 2017, the [SSA] rules were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Palan v. Saul*, No. 18-cv-02130-PAB, 2020 WL 2832375, at *3 n.3 (D. Colo. June 1, 2020) (quoting 20 C.F.R. § 404.1520c). Claims filed after March 27, 2017, like Plaintiff's, are governed by the new Regulations. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

7

and consistency of a medical source's opinion, and "may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate." *Id.*[7]

The supportability factor considers whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations. *Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (observing that supportability is "something internal to the medical source" because section 1520c(c)(1) examines "objective medical evidence and supporting explanations presented by" the medical source "to support his or her medical opinion(s)") (emphasis in original) (quotation omitted)). Conversely, the consistency factor requires a comparison between the medical source opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.*

The Regulations do not "prescribe the depth at which the ALJ must discuss" the factors of supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). But at minimum, the ALJ must "provide an explanation that allows

---

[7] However, the ALJ is required to articulate how she considered the remaining three factors if the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but are not exactly the same. 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3); *Zhu v. Commissioner*, No. 20-3180, 2021 WL 2794533, at *6 n.9 (10th Cir. July 6, 2021).

the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

## II.    Mr. Chris Leeman

Chris Leeman is a licensed marriage and family therapist. [Doc. 8-7 at 471]. He first saw Plaintiff on October 20, 2016 and continued to meet with Plaintiff through at least August 2018. [*Id.* at 471, 710]. Mr. Leeman completed a form titled "Residual Functional Capacity Evaluation (Mental)" to evaluate Plaintiff's limitations in various capacities. *See* [*id.* at 469–71].[8] The top of the form directs: "To determine [the claimant's] ability to do <u>work-related activities on a day-to-day basis in a regular work setting</u>, please give us an assessment, <u>BASED ON YOUR EXAMINATION</u>, of how the individual's mental/emotional capabilities are affected by any impairments you have diagnosed." [*Id.* at 469 (emphasis in original)]. Among other opinions, Mr. Leeman opined that Plaintiff has the following limitations affecting his work-related activities:

- A slight[9] limitation in the ability to carry out very short and simple instructions and a moderate[10] limitation in the ability to carry out detailed instructions;

- A slight or moderate limitation in the ability to maintain attention and concentration for extended periods;

- A slight limitation in the ability to sustain an ordinary routine without special supervision;

---

[8] The date on Mr. Leeman's evaluation form is substantially illegible but appears to read "01/09/2016." [Doc. 8-7 at 471]. As acknowledged by Defendant, *see* [Doc. 15 at 18 n.4], this is likely an incorrect date, given that Mr. Leeman simultaneously represents that he began seeing Plaintiff in October 2016. [Doc. 8-7 at 471].

[9] The form defines "slight" as "[s]ome mild limitation in this area, but generally functions well." [Doc. 8-7 at 469].

[10] The form states that "moderate" means "[s]ome impairment in this area, but not severe enough to meet the definition of at least marked." [Doc. 8-7 at 469].

9

- A moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods; and

- An "at least marked"[11] limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

[*Id.* at 469–70]. Some of the areas in which Mr. Leeman found Plaintiff moderately or markedly limited are abilities that the SSA has deemed necessary for any job. *See* Program Operations Manual System ("POMS") § 25020.010(B)(2).[12]

Mr. Leeman estimated that Plaintiff's mental impairments would cause him to be "mentally off task" for more than 30% of the work week and indicated that he would expect Plaintiff to have three or more days per month in which he was either absent or unable to complete a normal workday. [Doc. 8-7 at 470]. Mr. Leeman indicated that his opinions were based on his clinical exam findings and observations of Plaintiff and would be the same even in the absence of alcohol and/or drug abuse. [*Id.* at 471]. Where the form requested that the medical source "[l]ist some of the findings and observations that support [his] assessment," Mr. Leeman stated: "Patient is suffering from insomnia due to physiological conditions. This contributes to his depression, lack of focus[,] and makes it detrimental to memory [and] concentration." [*Id.*].

The ALJ found Mr. Leeman's opinion "not persuasive." [Doc. 8-9 at 830]. She stated, in full:

> [T]he undersigned considered the opinion of Chris Leeman, LMFT, one of the claimant's providers. He opined that the claimant had slight to marked [limitations] in various areas of mental functioning, as detailed in the report. He found the

---

[11] "At least marked" means "[t]here is at least a serious limitation in this area. There is at least a substantial loss in the ability to effectively function." [Doc. 8-7 at 469].

[12] Specifically, the POMS states that the abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions are skills needed for any job. POMS § 25020.010(B)(2).

>claimant would be off task more than 30% of the work week and would miss more than three days per month. He found these "mental" impairments would be severe even in the absence of alcohol and/or drug use. Mr. Leeman supported his opinion with reference to his treatment of the claimant. However, Mr. Leeman rendered treatment solely for the claimant's substance abuse disorders, as noted in his treatment notes, and, in fact, Mr. Leeman has only diagnosed the claimant with substance related disorders. Further, although the claimant regularly complained of fatigue due to lack of sleep, he also drove himself to therapy sessions unaided. The evidence of the claimant's good activities of daily living, including repeatedly driving to Denver to see or care for his children, or attend his son's graduation, or care for his brother, is inconsistent with finding a marked limitation in attendance and punctuality. For these reasons, the undersigned finds this opinion not persuasive.

[*Id.* (citations omitted)].

Plaintiff argues that the ALJ committed reversible error in her evaluation of Mr. Leeman's opinions because she failed to "explain why it mattered that Mr. Leeman only treated plaintiff for substance abuse disorders," because although Mr. Leeman was "treating plaintiff primarily for substance abuse, . . . he also appreciated plaintiff's other mental problems and the interrelationships between his other problems." [Doc. 12 at 15]. He also challenges the ALJ's reliance on his driving activities to conclude that Mr. Leeman's opinions were inconsistent with the record, asserting that there is no inconsistency between the fact that he drove himself to medical appointments and Mr. Leeman's opinions, such that the ALJ's conclusion lacks substantial supporting evidence. [*Id.* at 15–17]. The Commissioner responds that the ALJ adequately evaluated Mr. Leeman's opinions because "Mr. Leeman failed to adequately support his opinion[] as he was focused more on substance use than Plaintiff's other mental health issues." [Doc. 15 at 19]. She insists that "[w]hile the ALJ initially took issue with the nature of Mr. Leeman's treatment relationship with Plaintiff, i.e. for substance abuse treatment rather than therapy for other mental impairments, [the ALJ] still considered the supportability and consistency of [Mr. Leeman's

11

opinions]" and "reasonably determined that Mr. Leeman's opinion was not persuasive."  [*Id.* at 19–20].

As explained above, the Regulations contemplate that the ALJ will consider five different factors in evaluating the persuasiveness of a medical opinion, including the purpose of the treatment relationship.  20 C.F.R. §§ 404.1520c(c)(3)(iii), 416.920c(c)(3)(iii).  It was thus not error in and of itself for the ALJ to consider the fact that Mr. Leeman was seeing Plaintiff for substance-abuse-disorder treatment at the time he rendered his opinions.  Indeed, "[t]he purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)."  *Id.*  And an ALJ "is not required to explicitly discuss" this factor "unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record."  *Zhu*, 2021 WL 2794533, at *6 n.9 (citing 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3)).

However, it appears that the ALJ referenced the nature of Mr. Leeman's treatment relationship with Plaintiff for purposes of her *supportability* analysis.  *See* [Doc. 8-9 at 830 ("Mr. Leeman *supported* his opinion with reference to his treatment of the claimant.  *However*, Mr. Leeman rendered treatment solely for the claimant's substance abuse disorders, as noted in his treatment notes, and, in fact, Mr. Leeman has only diagnosed the claimant with substance related disorders." (citations omitted and emphasis added))]; *see also* [Doc. 15 at 19 (the Commissioner construing the statement the same way, arguing that "Mr. Leeman failed to adequately support his opinion[] as he was focused more on substance use than Plaintiff's other mental health issues")]; *see also Crystal*, 2022 WL 446023, at *6 (construing the ALJ's reference to the nature of treatment relationship as potentially addressing supportability where there was otherwise no supportability analysis).  Given that the supportability analysis looks to whether the opinions are supported by

12

the medical source's own treatment notes and diagnoses, *Crystal*, 2022 WL 446023, at *6, and because there is no other reference to Mr. Leeman's treatment of Plaintiff in her decision,[13] the Court can only assume that the ALJ intended this sentence to address the supportability factor.[14]

Because the ALJ relied on the purpose of Plaintiff's treatment to conclude that Mr. Leeman's opinions lacked supportability, the ALJ was required to explain how the evidence led to her conclusion that Mr. Leeman's opinions were not persuasive. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (requiring that the ALJ explain "*how* [she] considered the supportability and consistency factors" (emphasis added)); *Crystal*, 2022 WL 446023, at *6 ("Regardless of any other factors considered, the ALJ must explain how [s]he considered the two 'most important factors'—supportability and consistency." (emphasis in original)). This requires, at minimum, that the ALJ "eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazer v. Kijakazi*, No. CV 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (alteration marks, ellipses, and quotation omitted).

The ALJ's decision does not meet these minimum requirements. While the purpose of treatment "may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)," 20 C.F.R. §§ 404.1520c(c)(3)(iii), 416.920c(c)(3)(iii), the ALJ provides no

---

[13] Mr. Leeman is only mentioned one other time in the ALJ's decision, when the ALJ noted that Plaintiff told Dr. Terhakopian that he was attending therapy sessions but later admitted that "he had 'dropped the ball' and [had] not seen Chris Leeman (his counselor)." [Doc. 8-9 at 821].

[14] If the Court declined to construe this statement as addressing supportability, the ALJ's analysis would lack any discussion whatsoever of the supportability of Mr. Leeman's opinions, which would be grounds for reversal. *S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (finding that "the absence of any supportability analysis, contrary to regulations, is a significant error" warranting remand.).

explanation why a therapist primarily offering treatment for substance abuse issues cannot appropriately form or give opinions about his client's related mental functions or why the primary catalyst leading Plaintiff to treatment renders Mr. Leeman unknowledgeable about Plaintiff's functional limitations.  *See* [Doc. 8-9 at 830].  Mr. Leeman's treatment notes state that he provided Plaintiff "counseling concerning his substance abuse *and co-occurring disorders*."  [Doc. 8-7 at 744 (emphasis added)].  Mr. Leeman met with Plaintiff for at least 21 therapy sessions from August 2017 to August 2018, *see* [*id.* at 673–710], and in at least 10 of these sessions, Mr. Leeman and Plaintiff discussed Plaintiff's lack of sleep or fatigue.  *See* [*id.* at 680, 682, 686, 688, 690, 691, 694, 699, 705, 707]; *see also* [*id.* at 701 (Mr. Leeman observing that Plaintiff "appeared lethargic, having symptoms of insomnia")].  Furthermore, Mr. Leeman's treatment notes suggest that Plaintiff's treatment was much more fulsome than the ALJ implies.  *See, e.g.*, [*id.* at 686 ("Therapist worked with client again on grounding skills for anxiety."); *id.* at 688 ("Therapist helped client to identify the things he can control related to his health and mental condition."); *id.* at 690 ("Client and therapist discussed client initiative and reliability centered around controlling the things that he can control."); *id.* at 705 ("Therapist and client worked on mindfulness and client identified what he could control in his life was the amount of effort that he puts out on a daily basis even though he is limited by his medical condition.")].

Nor did the ALJ include any other discussion of the supportability of Mr. Leeman's opinions.  *See S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (explaining that a supportability discussion "could include, for example, whether [the provider's] treatment notes supported her opinion, the check-the-box format of her opinion, whether [the provider] examined plaintiff, and whether [the provider] explained how or why she reached her opinion.").  While the Commissioner cites to record evidence she believes

14

substantially supports the ALJ's RFC assessment, *see* [Doc. 15 at 9–12], this evidence was not cited or discussed by the ALJ in her evaluation of Mr. Leeman's opinion, and the Court cannot "adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007); *see also Zambrano*, 2022 WL 1746765, at *5 (the Court is "limited to evaluating the rationale offered by the ALJ to determine whether it conforms with the law and is supported by substantial evidence").

"[W]ithout further clarification, the Court cannot determine whether the reason given by the ALJ for rejecting [Mr. Leeman's] opinion is supported by the record." *Pharries v. Kijakazi*, No. CIV-22-750-STE, 2023 WL 3690253, at *7 (W.D. Okla. May 26, 2023). Because the Court cannot follow the ALJ's reasoning to determine how she considered the supportability of Mr. Leeman's opinions, the ALJ did not adequately articulate her consideration of this factor. *Zambrano*, 2022 WL 1746765, at *5.

The Court finds similar issues with the ALJ's consistency discussion. The ALJ concluded that Mr. Leeman's opinions were not consistent with the record because Plaintiff "drove himself to therapy sessions unaided" and because Plaintiff's activities of daily living, "including repeatedly driving to Denver to see or care for his children, or attend his son's graduation, or care for his brother, [are] inconsistent with finding a marked limitation in attendance and punctuality." [Doc. 8-9 at 830]. Plaintiff contends that these minimal activities do not contradict Mr. Leeman's opinions, and further argues that the ALJ erred by failing to explain why she found inconsistencies. [Doc. 12 at 15–17]. The Commissioner disagrees, maintaining that the ALJ properly addressed the consistency factor because she "contrasted Mr. Leeman's opinion to various statements in the record, including Plaintiff's own admissions that he could drive and travel on his own." [Doc. 15 at 20].

15

The Court respectfully agrees with Plaintiff and disagrees with Defendant. Simply identifying a purported inconsistency, without explaining *why* it is an inconsistency, is insufficient to meet the Regulations' articulation requirements. *See Landon B. v. Kijakazi*, No. 2:21-cv-00217, 2022 WL 4365953, at *6 (D. Utah Sept. 21, 2022). Because the "[a]bility to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,'" *Talbot v. Heckler*, 814 F.2d 1456, 1462–63 (10th Cir. 1987) (quotation omitted), it was all the more important for the ALJ to explain why Plaintiff's ability to drive himself to a therapy appointment or drive himself to Denver on an unknown number of occasions is inconsistent with Mr. Leeman's opinions about Plaintiff's *work-related* functional limitations—particularly, limitations "in attendance and punctuality," the two limitations specifically underscored by the ALJ as being inconsistent with Plaintiff's activities. There is not an obvious connection between the cited evidence and the ALJ's conclusion, and without further explanation, the driving-related rationales "do not provide valid bases" for rejecting Mr. Leeman's opinions because the Court cannot follow the ALJ's reasoning. *Landon B*, 2022 WL 4365953, at *6 (finding that the ALJ failed to adequately address the consistency factor where the ALJ noted that the claimant "was able to drive but . . . did not explain how this was inconsistent with [the claimant's] assessed limitations or otherwise relevant to [the provider's] opinion"); *cf. Salazar v. Kijakazi*, No. CV 21-0256 KK, 2022 WL 17266612, at *9 (D.N.M. Nov. 29, 2022) (taking issue with the ALJ's failure to explain how a medical source's work-related opinions conflicted with evidence showing that the claimant "was oriented to person, place, and time, or had normal mood and affect during visits to [the medical] office").

16

In sum, the Court concludes that the ALJ failed to properly address the supportability and consistency of Mr. Leeman's opinions, as required by the Regulations.  Remand is, therefore, warranted.  *See S.P.*, 2022 WL 4465080, at *3.[15]  The Court declines to address Plaintiff's remaining argument, as it "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

The Court respectfully **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.

DATED:  August 7, 2023                                      BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[15] The Commissioner does not argue that any error was harmless. *See generally* [Doc. 15]. "The failure to adequately articulate the consistency and supportability factors only constitutes 'harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.'" *Zambrano*, 2022 WL 1746765, at *7 (quoting *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014)).  The ALJ's RFC determination is not consistent with Mr. Leeman's functional limitations opinions because the RFC determination does not account for many of the functional limitations identified by Mr. Leeman.  *See* [Doc. 8-9 at 817]; POMS § 25020.010(B)(2).   Thus, the ALJ's failure to address the supportability and consistency requirements was not harmless.  *See Zambrano*, 2022 WL 1746765, at *7.